RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 3/4/14
BY Dm

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

BRIDGER LAKE, LLC

versus

SENECA INSURANCE COMPANY, INC.

CIVIL ACTION NO. 11-0342
JUDGE TOM STAGG

## MEMORANDUM RULING

Two motions are currently pending before the court. The first is a motion for summary judgment filed by Seneca Insurance Company, Inc. ("Seneca") seeking restitution of $100,000 it provided to Bridger Lake, LLC ("Bridger Lake") after Bridger Lake's underground oil pipeline ruptured in April 2010. See Record Document 52. The second is Bridger Lake's motion to strike the affidavit of Mark Finck ("Finck") that is attached to Seneca's motion for summary judgment. See Record Document 55. For the foregoing reasons, Seneca's motion for summary judgment is **GRANTED** and Bridger Lake's motion to strike is **DENIED AS MOOT.**

## I. BACKGROUND

The facts of this case were sufficiently summarized in the court's prior memorandum ruling, which the court herein adopts. See Record Document 40. In

its prior ruling, the court dismissed all of Bridger Lake's claims against Seneca. Specifically, this court held that Bridger Lake's damages resulting from the pipeline rupture were excluded from coverage under a pollution exclusion provision in Bridger Lake's insurance policy with Seneca, and further that a "short-term pollution event" exception did not apply. See id. The only remaining claim is Seneca's counterclaim for the $100,000 it advanced to Bridger Lake on or about May 4, 2010. See id.; Record Document 7.

Bridger Lake attempted to appeal the court's ruling despite recognizing that the ruling did not constitute a final judgment because Seneca's counterclaim had not been adjudicated. See Record Document 43. The Fifth Circuit dismissed the appeal, finding it did not have jurisdiction because Seneca's counterclaim remained unresolved. See Record Document 49. Seneca timely filed the instant motion for summary judgment on its counterclaim. See Record Document 52. Bridger Lake opposed the motion and also filed a motion to strike a portion of Finck's affidavit, which was attached in support of Seneca's motion. See Record Documents 54 and 55. Seneca filed a reply brief in support of its motion and opposed Bridger Lake's motion to strike. See Record Documents 57 and 59. Bridger Lake filed a reply brief

in support of its motion to strike. See Record Document 60.[1]

## II. LAW AND ANALYSIS

A. **Summary Judgment.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.

---

[1] Bridger Lake's motion seeks to strike a portion of Finck's affidavit—specifically, the first sentence of paragraph 12—on the grounds that Finck, a claims examiner for Seneca, lacks personal knowledge about the alleged fact. This court is aware of Rule 56's admonition that only admissible evidence may be considered in ruling on a summary judgment motion. See Stults v. Conoco, Inc., 76 F.3d 651, 654-55 (5th Cir. 1996). The court—fully cognizant of the evidentiary standards—will consider Finck's affidavit, giving the statements due weight and appropriately discounting any improper statements and evidence. Therefore, Bridger Lake's motion to strike is **DENIED as moot.**

2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.     Coverage For The Pipeline Rupture Was Excluded Under The Policy's Pollution Exclusion.**

The court hereby adopts and incorporates the findings and analysis from its prior memorandum ruling. See Record Document 40. Bridger Lake's insurance policy with Seneca contained a pollution exclusion, which the court found applied to the pipeline rupture. The policy also contained a short-term pollution event exception, which was not applicable under the circumstances. Therefore, Bridger Lake's damages resulting from the pipeline rupture were excluded from coverage and Seneca owed no obligations to Bridger Lake under the policy. Moreover, because Seneca did not owe any duty to Bridger Lake, Seneca's failure to pay was not unreasonable or otherwise in bad faith. Consequently, all of Bridger Lake's claims against Seneca were dismissed.

C.   **Seneca's Counterclaim For Return Of $100,000 Advanced To Bridger Lake.**

Seneca contends that, because coverage for the pipeline rupture was excluded, it is entitled to reimbursement of the $100,000 it advanced to Bridger Lake one month after the rupture occurred. The advance was made "under the Policy to assist . . . with immediate remediation costs." Record Document 52, Ex. A at Ex. 1. When Seneca sent Bridger Lake the money, it included a reservation of rights letter stating that "[t]his advance is not to be construed as a[n] admission of coverage, and [Seneca] expressly reserves its right to seek reimbursement of the $100,000 from [Bridger Lake] in the event that . . . there is no coverage for this loss." Id. However, the letter also stated that if it was determined coverage did exist, the $100,000 advance would be taken out of the $1,000,000 coverage limit. See id.

Ultimately, the question presented to the court is whether an insurer who advances funds to its insured party, following an event appearing to be covered under the insured's policy with the insurer, should be allowed to seek reimbursement of those funds if it is subsequently determined the event is not covered under the policy. For the reasons that follow, the court finds an insurer has the right to seek reimbursement of advanced funds if it is later determined no coverage exists.

If the court prohibited Seneca from seeking reimbursement of the $100,000,

Bridger Lake would be unjustly enriched. As established in the court's prior ruling, Seneca owed Bridger Lake no duty with respect to the pipeline rupture. Had Seneca simply withheld all funds and forced Bridger Lake to sue to resolve the dispute over whether coverage existed, Bridger Lake would have no claim to any funds from Seneca. It is unclear to this court why Bridger Lake should now be entitled to keep the funds that Seneca chose to advance to aid with environmental cleanup and remediation efforts, when Seneca made it clear it was not conceding that coverage existed.

A similar scenario presented itself in <u>Lindsay Manufacturing Company v. Hartford Accident & Indemnity Company</u>, 911 F. Supp. 1249 (D. Neb. 1995).[2] A manufacturing company sued its general liability insurer to recover additional cleanup costs after the company contaminated an aquifer. The insurer denied coverage and counterclaimed for reimbursement of over two million dollars it had advanced the company for cleanup costs. After finding there was no coverage, the court granted the insurer's counterclaim. The court noted that the company had been unjustly enriched, as it was not entitled to any funds from the insurer, and the company had not detrimentally changed its position in reliance on receipt of the funds. <u>See Lindsay</u>

---

[2] <u>Rev'd on other grounds, Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.</u>, 118 F.3d 1263 (8th Cir. 1997).

Mfg. Co., 911 F. Supp. at 1259-60. Specifically, the court found the insurer should not be punished for acting in good faith and that "it would be unwise to discourage insurers from making payments, even if the payments were made in error, by refusing to permit later adjustments." Id. at 1259. Other courts have applied similar reasoning in analogous cases. See Harnischfeger Corp. v. Harbor Ins. Co., 927 F.2d 974, 977 (7th Cir. 1991)(noting that, if insurers were not allowed to seek reimbursement for funds paid out when coverage did not exist, then insurers "will resolve all close cases against coverage. . . . [I]nsurers will balk in the future, compelling their insureds to pay up front and bring suit to recover."); Compass Ins. Co. v. Cravens, Dargan & Co., 748 P.2d 724, 730 (Wyo. 1988)("[A]n insurer who acts in good faith to discharge a disputed obligation does not become a mere volunteer if it is ultimately determined that the insurer's policy did not apply.").

Bridger Lake's opposition claims there are contested material facts that prevent summary judgment. Specifically, Bridger Lake argues that the pipeline operator did not advise Seneca that he instructed the pumpers to stop pumping oil into the pipeline on April 1—in which case, the short-term pollution event exception would have applied and coverage would have existed. Additionally, Bridger Lake contends that while Seneca purported to advance the $100,000 because it thought oil stopped pumping on April 1, later communications from Seneca show that it knew the

pipeline was operating until April 5. However, even assuming that Bridger Lake's arguments have merit, they do not preclude summary judgment. Even though it became clear at some point the pipeline was operating until April 5, the parties still required a determination from this court whether the pipeline rupture and subsequent contamination was subject to either the pollution exclusion or the short-term pollution event exception in the policy. At the time Seneca advanced the money, neither party knew whether or not the policy mandated coverage, which is why Seneca expressly reserved its rights to argue that no coverage existed. None of the contested facts that Bridger Lake cites changes the facts that Seneca advanced Bridger Lake $100,000 when it ultimately had no duty to do so and Bridger Lake has been unjustly enriched due to that advance.

Bridger Lake further argues that Seneca is not entitled to reimbursement of the money because its reservation of rights letter was an impermissible attempt to alter the terms of the policy. To support this point, Bridger Lake cites to Shoshone First Bank v. Pacific Employers Insurance Company, 2 P.3d 510 (Wyo. 2000). In Shoshone, an insurer paid litigation expenses to defend its insured against multiple claims, some of which were not covered under the insurance policy. The insurer sent the insured a letter expressly reserving the right to seek reimbursement of defense costs for non-covered claims. See Shoshone, 2 P.3d at 511-13. The Wyoming

Supreme Court held that an insurer's duty to defend extends to all claims brought against the insured and that "unless an agreement to the contrary is found in the policy, the insurer is liable for all of the costs of defending the action." Id. at 514. When the insurer pointed to its reservation of rights letter, the court held that an insurer "is not permitted to unilaterally modify and change policy coverage. . . . In light of the failure of the policy language to provide for allocation (of defense costs), we will not permit the contract to be amended or altered by a reservation of rights letter." Id. at 515-16.

Unfortunately for Bridger Lake, Shoshone is easily distinguishable from the present case. There is a legal requirement that insurers defend their clients against all claims unless the policy expressly states otherwise. While they do have a duty to act in good faith, insurers are not required to advance funds to a client when coverage has not yet been established. See Matlack v. Mtn. W. Farm Bur. Mut. Ins. Co., 44 P.3d 73, 80 (Wyo. 2002)("[A]n insurer's duty to defend is broader than its duty to provide coverage."); Shoshone, 2 P.3d at 513 ("The duty of the insurer to defend is more extensive than its duty to indemnify the insured."). Additionally, Bridger Lake has not cited any term in the policy that Seneca is purporting to modify. While there is no language in the policy requiring Bridger Lake to return any money "voluntarily" advanced by Seneca, there is also no language requiring Seneca to indemnify Bridger

Lake for non-covered events.

If Seneca could not seek reimbursement, insurers would have no incentive in the future to advance any funds to insured clients before coverage was definitively established, to avoid unjustly enriching their clients. At the same time, withholding funds might be a violation of the duty of good faith. The more equitable policy is to allow insurers who advance funds but expressly reserve objections regarding coverage to seek reimbursement if it is later determined that no coverage existed.

### III. CONCLUSION

Based on the foregoing, Seneca's motion for summary judgment is **GRANTED** and judgment is granted in favor of Seneca on its counterclaim against Bridger Lake in the amount of $100,000.00, with interest and costs allowed by law.

Bridger Lake's motion to strike is **DENIED AS MOOT**.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana this 3 day of March, 2014.

JUDGE TOM STAGG